UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARIE C. JENSEN,

                                    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                                    Defendant.

Case No.:  15cv1104-AJB (DHB)

**REPORT AND
RECOMMENDATION REGARDING
CROSS-MOTIONS FOR SUMMARY
JUDGMENT**

**[ECF Nos. 16, 20]**

On May 17, 2015, Plaintiff Marie C. Jensen ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act requesting judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding the denial of her claim for Disability Insurance benefits (Title II). (ECF No. 1.)  On August 31, 2015, Defendant filed an Answer (ECF No. 11) and the Administrative Record ("A.R.").  (ECF No. 12.)  On November 30, 2015, Plaintiff filed a motion for summary judgment seeking reversal of Defendant's denial and remand for further administrative proceedings.  (ECF No. 16.)  Plaintiff contends the Administrative Law Judge ("ALJ") committed reversible error by:  (1) failing to address the state agency physicians' opinion evidence; and (2) failing to provide legally sufficient reasons for rejecting Plaintiff's testimony.  (*Id*.)  On February 4, 2016, Defendant filed an opposition

to Plaintiff's motion for summary judgment and a cross-motion for summary judgment. (ECF Nos. 20, 21.)  On March 10, 2016, Plaintiff filed a reply to Defendant's cross-motion for summary judgment.  (ECF No. 22.)

For the reasons set forth herein, and after careful consideration of the Administrative Record and the applicable law, the Court hereby **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's cross-motion for summary judgment be **GRANTED**.

## I.     PROCEDURAL BACKGROUND

On October 18, 2011, Plaintiff protectively filed an application for Title II, Disability Insurance Benefits.  (A.R. 210-214.)  In her application, Plaintiff alleged that her disability began on November 30, 2010.  (A.R. 210.)  Plaintiff's claim was denied initially on January 27, 2012, and upon reconsideration on June 5, 2012.  (A.R. 90-94, 97-101.)  Thereafter, Plaintiff requested a hearing before an ALJ.  (A.R. 103-104.)  On July 29, 2013, ALJ Sally Reason held a hearing regarding Plaintiff's application for social security disability benefits.  (A.R. 44-61.)  On September 5, 2013, the ALJ rendered an unfavorable decision and concluded that Plaintiff was not entitled to benefits.  (A.R. 21-32.)  The ALJ's decision became final on March 25, 2015, when the Appeals Council denied Plaintiff's request for review.  (A.R. 1-6.)  Thereafter, Plaintiff filed the instant action.  (ECF No. 1.)

## II.     LEGAL STANDARDS

### A. Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things:  (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id.*

/ / /

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett*, 180 F.3d at 1098, n.3 (citing 20 C.F.R. § 404.1512(d)).  At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

/ / /

/ / /

**B. Scope of Review**

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) (citing *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence.") (citing *Tidwell*, 161 F.3d at 601).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457 (citing *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993)).  In considering the record as a whole, the Court must weight both the evidence that supports and detracts from the ALJ's conclusions.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).  The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.") (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).  However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the

proper legal standards in weighing the evidence and reaching a conclusion.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

Section 405(g) permits the Court to enter a judgment affirming, modifying or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  *Id.*

### III.    FACTUAL BACKGROUND

Plaintiff alleges that her disability began on November 30, 2010.  (A.R. 210.) Plaintiff claims disability based on various conditions including, lumbar stenosis, arthritis, migraines, neuropathy, bladder issues, anxiety, and joint pain.  (A.R. 230.)  Prior to her disability, Plaintiff worked as a cashier manager/check cashing agency cashier.  (A.R. 223-224, 231.)

**A. <u>Medical Evidence</u>**[1]

**1.  Treating Physician Evidence**

a.  <u>Dr. Boyle Park, M.D.</u>

In October 2009, Plaintiff saw Dr. Boyle Park, M.D. at Kaiser Permanente after being involved in a rear-end motor vehicle accident.  (A.R. 308-322.)  Plaintiff complained of pain in her neck, back, left arm and right leg.  (A.R. 309.)  Dr. Park noted Plaintiff was able to work.  (*Id.*)  Dr. Park indicated Plaintiff was gradually improving, had normal strength and range of motion.  (A.R. 309-311.)  He recommended that Plaintiff resume an exercise program in 1-2 weeks.  (A.R. 311-313.)

Plaintiff visited Dr. Park for a follow-up appointment on December 4, 2009.  (A.R. 315-322.)  Plaintiff reported that her neck and back pain were improving, but she had pain in her left elbow and numbness in her hand.  (A.R. 316.)  Dr. Park noted that her hand

---

[1] Plaintiff does not contest the ALJ's findings with regard to her mental impairments or mental functional ability.  Therefore, only Plaintiff's physical health evidence is summarized here.

strength and motor function were normal.  (*Id.*)  Dr. Park diagnosed Plaintiff with ulnar elbow neuropathy, ordered an x-ray, and referred her to neurology.  (A.R. 318-319.)  The subsequent x-ray showed normal findings.  (A.R. 318.)

Plaintiff saw Dr. Park again on July 2, 2010.  (A.R. 601-609.)  Plaintiff reported that her right leg and foot were swollen.  (A.R. 602-603.)  Dr. Park ordered that Plaintiff be tested for blood clots.  (A.R. 607.)  The test was negative.  (A.R. 702.)

On November 19, 2010, Plaintiff saw Dr. Park for hemorrhoids, and requested documentation to submit to her work, because she indicated she was going out on disability.  (A.R. 694.)

Plaintiff saw Dr. Park on September 26, 2011 for a back injury.  (A.R.1011-1018.)  Plaintiff stated that she had tripped and fell onto an asphalt surface on August 5, 2011.  (A.R.1012.)  Plaintiff indicated she was taking morphine at the time.  (*Id.*)  Dr. Park noted Plaintiff had multiple contusions, and recommended she continue taking ultram.  (A.R. 1014.)

On October 10, 2010, Plaintiff saw Dr. Park for a lump behind her knee.  (A.R. 1029-1036.)  Plaintiff indicated she had a lump behind her right knee, had mild knee pain, and the pain was worse with walking.  (A.R. 1030.)  Dr. Park diagnosed Plaintiff with having a small Baker's cyst of the right knee.  (*Id.*)  He advised her to observe the cyst and return in the pain increased.  (A.R. 1033.)

On January 27, 2012, Plaintiff saw Dr. Park for low back pain.  (A.R. 1151-1156.)  Plaintiff reported that she was having right side back pain that radiated down her left thigh.  (A.R. 1151.)  Dr. Park noted Plaintiff's motor function and reflexes were normal.  (*Id.*)  Dr. Park referred Plaintiff for a follow up with Physical Medicine.  (*Id.*)

### b.  Dr. Sumati Rawat, M.D.

On December 9, 2009, Plaintiff saw Dr. Sumati Rawat, M.D., for a nerve conduction study.  (A.R. 323-337.)  Dr. Rawat noted some weakness and sensation impairment in Plaintiff's left hand.  (A.R. 324.)  He found that her gait and coordination were normal.  (A.R. 325.)  The nerve conduction study showed evidence of ulnar mononeropathy at the

elbow, but no evidence of active denervation.  (A.R. 326.)  Dr. Rawat prescribed a course of steroids, recommended the use of an elbow pad, referred Plaintiff to physical therapy, and ordered an MRI of the cervical spine.  (A.R. 327.)  The MRI revealed multilevel spondylosis.  (A.R. 332-333.)

In January 21, 2010, Plaintiff had a follow-up appointment with Dr. Rawat.  (A.R. 338-342.)  Dr. Rawat noted that Plaintiff reported overall her symptoms had improved, but she was still having occasional numbness in her forearm and hand.  (A.R. 338.)  Dr. Rawat advised Plaintiff to continue to protect her elbow and referred her to physical therapy. (A.R. 339.)

In April 2010, Dr. Rawat performed a follow-up nerve conduction study on Plaintiff. (A.R. 445-452.)  Plaintiff reported that her grip strength was better, but she had a stiff neck and left side neck pain.  (A.R. 445.) Plaintiff also reported that she had been going to physical therapy and traction, but that the traction did not help.  (*Id.*)  The nerve conduction study showed "much improvement" in the ulnar mononeuropathy.  (A.R. 447-448.)  Dr. Rawati advised Plaintiff to continue with physical therapy and prescribed a muscle relaxer and anti-inflammatory medications.  (A.R. 448.)

On September 20, 2010, Plaintiff had a follow-up appointment with Dr. Rawat. (A.R. 656-663.)  Plaintiff reported that she was feeling worse, feeling numbness in every limb, and had neck pain and stiffness.  (A.R. 656-657.)  Plaintiff indicated she had some improvement from the epidural steroid injection she received.  (A.R. 656.)  Plaintiff stated she had stopped going to physical therapy.  (*Id.*)  Dr. Rawat stated Plaintiff had some weakness and sensation impairment in her left hand, but no other weakness.  (A.R. 657.) Dr. Rawat also noted Plaintiff's gait and coordination were normal.  (*Id.*)

Plaintiff saw Dr. Rawat again on February 14, 2011.  (A.R. 750-760.)  Plaintiff reported improvement in her headaches, bladder issues, and some improvement from receiving epidural injections.  (A.R. 750.)  Dr. Rawat noted there was no weakness in her arms, and only mild weakness in her fingers.  (A.R. 751.)  He indicated her gait was normal. (*Id.*)  Dr. Rawat indicated the weakness in Plaintiff's left arm was "much improved," and

1   that she needed to work on weight loss.  (*Id.*)

2       On May 24, 2011, Plaintiff returned to Dr. Rawat's office.  (A.R. 831-839.)  Plaintiff

3   received a trigger point injection.  (A.R. 833.)  Dr. Rawat noted that there was no longer

4   any weakness in Plaintiff's fingers.  (A.R. 832.)  He indicated Plaintiff had some tenderness

5   to palpitation in her neck, and that she had mild sensory impairment in her left fingers and

6   elbow.  (*Id.*)

7       On June 21, 2011, Plaintiff saw Dr. Rawat for another trigger point injection.  (A.R.

8   894-902.)  Dr. Rawat noted that Plaintiff was on temporary disability, that her weight had

9   increased, and that she was using a cane.  (A.R. 895.)

10      Plaintiff returned to Dr. Rawat's office on April 11, 2012.  (A.R. 1177-1183.)

11  Plaintiff reported pain in her right leg, left shoulder, and neck.  (A.R. 1178.)  Dr. Rawat

12  noted that Plaintiff was wearing an elbow pad, but her left side was no longer weak.  (*Id.*)

13  He also noted that Plaintiff had gained weight.  (*Id.*)  Plaintiff was given trigger point

14  injections.  (A.R.1179.)

15          c.  Dr. Nancy Lin, M.D.

16      On February 5, 2010, Plaintiff was treated by Dr. Nancy Lin, M.D.  (A.R. 346-364.)

17  Plaintiff reported pain in her low back and hip, tingling in her legs and feet, and weakness

18  in her legs.  (A.R. 346.)  Dr. Lin noted Plaintiff had normal strength in her extremities,

19  some diminished sensation in her right ankle and foot, and left hand.  (A.R. 349.)  Dr. Lin

20  also noted Plaintiff had an antalgic gait, but was able to walk without an assistive device.

21  (*Id.*)  Dr. Lin diagnosed Plaintiff with bursitis in her left hip and radiculitis in the lumbar-

22  sacral spine.  (A.R. 351.)  Dr. Lin ordered an MRI, and prescribed gabapentin for pain.

23  (*Id.*)  The MRI showed multilevel lumbar spondylosis.  (A.R. 359.)

24      Plaintiff saw Dr. Lin on March 19, 2010 for a follow-up visit.  (A.R. 414-430.)

25  Plaintiff reported that initially the gabapentin made her feel "loopy," but it was becoming

26  more tolerable, and she was less drowsy.  (A.R. 414.)  Dr. Lin noted Plaintiff was "doing

27  a little better."  (A.R. 420.)  Dr. Lin referred Plaintiff to physical therapy for her back,

28  instructed her to continue physical therapy for her neck and to continue to take the

gabapentin, and advised her to work on weight loss.  (A.R. 428-429.)

On June 3, 2010, Plaintiff saw Dr. Lin.  (A.R. 520-543.)  Plaintiff indicated she was having back pain, hip pain, and leg pain.  (A.R. 520.)  Plaintiff also reported that she was having trouble urinating, so Dr. Lin referred her to urology.  (*Id.*)  Dr. Lin noted that Plaintiff "seems to have had a set back."  (A.R. 526.)  Dr. Lin recommended Plaintiff consider an epidural, and acupuncture.  (A.R. 527.)  Dr. Lin indicated Plaintiff could use a cane when necessary.  (*Id.*)  Plaintiff was also provided with a temporary disability placard for her vehicle.  (*Id.*)  Dr. Lin advised Plaintiff to continue with physical therapy and gabapentin.  (A.R. 541-542.)  Dr. Lin also administered a left hip injection and ordered another MRI.  (A.R. 527.)  The MRI showed there were no changes, which Dr. Lin described as "good news."  (*Id.*)

d.  Dr. Kevin O'Brien, M.D.

On June 7, 2010, Plaintiff saw Dr. Kevin O'Brien, M.D. for her bladder issues.  (A.R. 552-556.)  Dr. O'Brien noted that Plaintiff used a cane, but was not in acute distress.  (A.R. 553.)  Dr. O'Brien referred Plaintiff to a vocational nurse, who taught Plaintiff how to self-catheterize.  (A.R. 553.)

e.  Dr. Sarah Schuler, M.D.

On June 21, 2010, Plaintiff saw Dr. Sarah Schuler, M.D., for pain management.  (A.R. 584-598.)  Dr. Schuler noted that Plaintiff had normal range of motion in both hips, but had decreased strength in her right hip.  (A.R. 585.)  Plaintiff also had decreased range of motion in the lumbar spine. (*Id.*)  Dr. Schuler noted Plaintiff had normal gait, normal straight leg test, normal sensation and no sensory defect.  (*Id.*)  Plaintiff was able to briefly go on her toes, heels, squat and rise.  (*Id.*)  Plaintiff was tender in the piriformis, had a positive Hoffman's test on the right side only.  (*Id.*)  Plaintiff reported that her pain was a 4/10 on average with 10/10 flares.  (A.R. 586.)  Plaintiff indicated she had pain in her back and weakness and numbness in her left leg.  (*Id.*)  Plaintiff stated her pain was 80-90% in her back, and 10-20% in the legs.  (A.R. 586, 589.)  Plaintiff reported that she worked full time and wanted to keep working.  (A.R. 586.)  Plaintiff stated that changing positions and

standing helped with pain.  (A.R. 589.)  Dr. Schuler noted that Plaintiff had poor buttock strength and core stability.  (*Id.*)  Dr. Schuler ordered steroid injections, and directed Plaintiff to continue with Physical Therapy.  (*Id.*)

        f.  Dr. Jaianand Sethee, M.D.

On August 19, 2010, Plaintiff received an epidural steroid injection in her back from Dr. Jaianand Sethee, M.D.  (A.R. 621-640.)  Dr. Sethee noted Plaintiff reported low back pain, and that Plaintiff had normal neurological strength.  (A.R.623.)

Plaintiff saw Dr. Sethee again on October 29, 2010 for lumbar facet intra-articular injection.  (A.R. 664-683.)

On January 10, 2011, Plaintiff returned to Dr. Sethee's office for a follow-up.  (A.R. 722-736.)  Plaintiff indicated she had significantly benefited from the epidural steroid injection, but the facet injections made her pain worse.  (A.R. 723)  Dr. Sethee noted that Plaintiff was walking with a cane.  (*Id.*)  He recommended repeating the steroid injection, and explained that the injection could be repeated every 6 months.  (A.R. 727.)  Dr. Sethee referred Plaintiff to Comprehensive Pain Program for cognitive behavior therapy, and encouraged weight loss.  (*Id.*)

Plaintiff received an epidural steroid injection from Dr. Sethee on February 15, 2011.  (A.R. 761-778.)

Plaintiff saw Dr. Sethee again on September 6, 2011.  (A.R. 999-1010.)  Plaintiff reported that she had received significant pain relief and improvement in functional status with her previous injections.  (A.R. 999.)  Dr. Sethee gave Plaintiff another lumbar epidural steroid injection.

        g.  Dr. Michael Flippin, M.D.

On January 4, 2011, Plaintiff saw Dr. Michael Flippin, M.D., for a surgical consultation.  (A.R. 709-721.)  Plaintiff reported that she had constant back pain, pain and numbness in her legs, and tingling in her hands/arms.  (A.R.710.)  Plaintiff indicated that physical therapy made her worse, and that injections gave her little relief.  (*Id.*)  Upon examination, Dr. Flippin noted no tenderness in the back, buttocks and hips.  (A.R. 712.)

He indicated Plaintiff was limping.  (*Id.*)  However, he found Plaintiff was able to stand on her heels and toes, had normal motor strength in all major muscle groups, and that her sensation was intact in her lower extremities.  (A.R. 712-713.)  He also assessed normal range of motion and no pain in the hip.  (A.R. 713.)  Dr. Flippin determined that Plaintiff was not a candidate for surgery.  (*Id.*)  He stated Plaintiff's symptoms were not well explained by her disc herniation, and that her symptoms were likely caused by multiple factors, including anxiety.  (*Id.*)

h.  Dr. Kimberly Lovett, M.D.

On May 27, 2011, Plaintiff saw Dr. Kimberly Lovett, M.D., for pain management.  (A.R. 853-873.)  Plaintiff reported pain in her back, legs, neck and up her spine.  (A.R. 854.)  Plaintiff stated that her pain was consistently 7/10.  (*Id.*)  She indicated trigger point injections and spinal injections were helpful.  (*Id.*)  Dr. Lovett noted that Plaintiff had a normal gait, with cane use.  (A.R. 855.)  Dr. Lovett prescribed a low dose of morphine and Cymbalta.  (A.R. 855-856.)  She also encouraged Plaintiff to exercising daily. (*Id.*)

Plaintiff returned to Dr. Lovett's office on June 3, 2011 for a follow-up visit.  (A.R. 874-882.)  Plaintiff indicated she had stopped taking the morphine and Cymbalta, and her pain had not improved.  (A.R. 875.)  Dr. Lovett noted that Plaintiff was sensitive to the antidepressant medication Cymbalta, and directed Plaintiff to try the morphine again.  (A.R.875-876.)

On July 8, 2011, Plaintiff saw Dr. Lovett again.  (A.R. 912-922.)  Plaintiff reported that she was "doing much better."  (A.R. 912-913.)  Plaintiff had started topomax, which gave her great relief from headaches and neck pain.  (A.R. 913.)  Plaintiff was also tolerating the morphine "very well," and she did not have any side effects.  (*Id.*)  Plaintiff indicated she was able to shop, run errands, stretch, and perform activities of daily living.  (*Id.*)  Dr. Lovett noted that Plaintiff was alert, with no sedation, and that overall she had "great improvement in pain, function, and attitude."  (A.R. 914.)

On August 12, 2011, Plaintiff returned to Dr. Lovett.  (A.R. 952-963.)  Plaintiff indicated she had stopped taking the morphine.  (A.R. 953.)  Plaintiff reported she was

happy with taking tramadol, and requested to use tramadol at that point. (A.R. 954.) Dr. Lovett indicated Plaintiff had failed available oral therapy for chronic pain management, and that she was intolerant to most medications, and reluctant to try any further medications. (*Id.*) Dr. Lovett advised Plaintiff to continue with pain management classes, and sent her back to primary care. (*Id.*)

### i. Dr. Jessica Ann Deree, M.D.

On November 3, 2011, Plaintiff saw Dr. Jessica Ann Deree, M.D. for treatment of a breast lump. (A.R. 1051-1071.) Dr. Deree noted that Plaintiff had cervical and lumbar pain that required steroid injections, and left elbow pain, for which she wore a brace. (A.R. 1053.) Plaintiff also walked with a cane. (*Id.*) Dr. Deree ordered a biopsy of the lump in Plaintiff's left breast. (A.R. 1056.)

On December 1, 2011, Plaintiff saw Dr. Deree for an appointment following the biopsy. (A.R. 1072-1078.) Dr. Deree noted that Plaintiff requested a work extension. (A.R. 1073.) Dr. Deree denied Plaintiff's request finding there was "no reason to offer one." (*Id.*) Dr. Deree advised Plaintiff to increase her activity to improve her pain. (*Id.*)

### j. Dr. Yvonne Marie Aube, M.D.

On February 29, 2012, Plaintiff saw Dr. Yvonne Marie Aube, M.D. (A.R. 1157-1168.) Plaintiff reported having low back, hip, and leg pain that was getting worse. (A.R. 1158.) Dr. Aube noted that Plaintiff used a cane and walker, but that her gait was normal and she could heel walk and toe walk symmetrically. (A.R. 1159, 1161.) Dr. Aube assessed normal range of motion, sensation, neurological functioning, reflexes, and full motor strength and no muscle atrophy in Plaintiff's lower extremities. (A.R. 1161.) Dr. Aube indicated Plaintiff had moderately reduced lumbar range of motion and some muscle tenderness to palpation. (*Id.*) Dr. Aube diagnosed Plaintiff with lumbar radiculopathy and myofascial pain syndrome. (A.R. 1163.) She recommended Plaintiff obtain another steroid injection, and encouraged Plaintiff start a water exercise program. (*Id.*)

/ / /

/ / /

k.  <u>Physical Therapy</u>

Plaintiff began physical therapy in February 2010.  (A.R. 365-392, 402-411, 433-441, 456-519, 558-580, 610-619, 656.)   On October 24, 2011, Plaintiff was discharged from physical therapy.  (A.R.1037-1045.)

**2. Non-Examining Physician Evidence**

a.  <u>Dr. Keith J. Wahl, M.D.</u>

On January 4, 2012, Dr. Keith Jay Wahl, reviewed the medical record and completed a Residual Functional Capacity Assessment for Plaintiff.  (A.R. 62-75.)  Dr. Wahl noted that Plaintiff's recent medical evaluations had shown her pain had improved with medication, and that she had no significant restrictions in her activities of daily living. (A.R. 67.)  Dr. Wahl found Plaintiff had at least a sedentary RFC.  (*Id.*)  He further stated that Plaintiff was limited to standing and/or walking for 2 hours, that she could sit for 6 hours, lift 20 pounds occasionally, and lift 10 pounds frequently.  (A.R. at 72.)  Dr. Wahl also found Plaintiff was limited to frequent overhead and front/lateral reaching.  (*Id.*)

b.  <u>Dr. F. Kalmar, M.D.</u>

On June 5, 2012, Dr. F. Kalmar, M.D. re-evaluated Plaintiff's medical records. (A.R. 77-87.)  Dr. Kalmar noted that Plaintiff's medical records showed she complained of pain, but also showed she had full motor strength, normal range of motion, normal gait, and she could heel & toe walk.  (A.R. 80.)  Dr. Kalmar concluded that the initial sedentary RFC was appropriate.  (*Id.*)

c.  <u>Dr. S. Lee, M.D.</u>

On January 20, 2012, Dr. S. Lee, M.D. reviewed Plaintiff's medical records.  (A.R. 1142-1148.)  Dr. Lee noted that Plaintiff had received various therapies for pain, including physical therapy, steroid injections, and pain management.  (A.R. 1144.)  Dr. Lee noted that recent treatment notes indicated Plaintiff's pain had improved with medication, and she was doing better.  (*Id.*)  Dr. Lee opined that Plaintiff appeared to have no significant restrictions with activities of daily living.  (*Id.*)  Dr. Lee determined that Plaintiff retained at least a sedentary RFC.  (A.R. 1145.)  Dr. Lee clarified that it would be appropriate to

limit Plaintiff's standing/walking to 2 hours.  (*Id.*)

**B. The Hearing**

**1.  Plaintiff's Testimony**

On July 29, 2013, Plaintiff testified at the hearing before the ALJ, in Los Angeles, California.  (A.R. 48-56, 58.)  Plaintiff testified that she had worked at a check cashing agency for 22 years.  (A.R. 49-50.)  Her job responsibilities included opening, closing, doing paperwork, lifting and carrying coins, selling money orders, cashing checks, and making phone calls.  (A.R. 50-51.)  Plaintiff stated that she performed most of her work standing up.  (A.R. 58.)

Plaintiff testified that in October 2009, she was involved in a motor vehicle accident. (A.R. 49.)  Plaintiff continued to work for a year following the accident.  (*Id.*)  Plaintiff said she stopped working in September 2010, because she wasn't able to lift the coins, she was falling down, having tremors and dropping things, she had mental issues, and was in pain. (A.R. 50-54.)  Plaintiff testified that she was missing 3 to 4 days of work each month due to her medical issues and doctor appointments.  (A.R. 53-54.)  Plaintiff went out on medical disability and was laid off when she was unable to return.  (A.R. 51-52.)  Plaintiff stated that she didn't try to go back to work because she didn't feel like she could perform properly and was not 100 percent.  (A.R. 52-53.)

Plaintiff testified that she uses a walker or cane, which were prescribed by a doctor. (A.R. 55.)  Plaintiff stated that she can only sit or stand for 10-15 minutes before she needs to take a break and change positions.  (A.R. 54-55.)  She is able to walk for 20 minutes, if she uses her cane or walker.  (A.R. 55.)  Plaintiff can lift a gallon of milk with pain.  (A.R. 55.)  Plaintiff stated her husband does vacuuming, and her neighbor sometimes helps with cleaning the bathroom because she can't clean the bathtub.  (A.R. 55-56.)

Plaintiff testified that she had been experiencing depression and anxiety since the car accident.  (A.R. 56.)  She didn't see a psychiatrist until later when she had thoughts of putting herself to sleep and not waking up.  (*Id.*)  Plaintiff stated she also had memory and concentration problems.  (*Id.*)

### 2. Vocational Expert's Testimony

On July 29, 2013, Gregory Jones testified before the ALJ as a vocational expert. (A.R. 57-60.)  Mr. Jones testified that Plaintiff's past work should be classified as check cashing agency cashier, Dictionary of Occupational Titles Code 211.462.026, which is a semi-skilled position, with a sedentary exertional level.  (A.R. 57.)  Mr. Jones stated that based on Plaintiff's testimony, the exertional requirements of Plaintiff's past work was light, as it was actually performed.  (A.R. 58.)

Plaintiff's counsel asked Mr. Jones to consider a hypothetical claimant who was the same age and had the same education and work history as Plaintiff, who was limited to lifting and carrying 20 pounds frequently and 10 pounds occasionally, standing for 2 hours and sitting for 6 hours of an 8 hour workday, and was also limited to simple, repetitive tasks.  (A.R. 59.)  Mr. Jones opined that this hypothetical person would not be able to perform Plaintiff's past relevant work.  (*Id.*)  Counsel then asked Mr. Jones to consider the same hypothetical individual who was limited to sedentary work, with simple repetitive tasks.  (*Id.*)  Mr. Jones stated the hypothetical individual would not be able to perform Plaintiff's past relevant work.  (*Id.*)  Finally, Plaintiff's counsel asked Mr. Jones to consider the same hypothetical claimant who also had cognitive limitations from depression and anxiety that caused the person to be off task for 15-20% of the workday.  (A.R. 59-60.)  Mr. Jones opined the person would not be able to perform Plaintiff's past work or any other work in the national economy.  (A.R. 60.)

### C. **The ALJ's Findings**

On September 5, 2013, the ALJ rendered an unfavorable decision regarding Plaintiff's application for disability benefits.  (A.R. 21-32.)  The ALJ followed the five-step sequential evaluation process in rendering her decision.  (*Id.*)  At step one, the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity since November 30, 2010, the alleged onset date."  (A.R. 23.)  At step two, the ALJ concluded that Plaintiff has the following sever impairments: obesity, cervical and lumbar spine degenerative arthritis, left ulnar neuropathy, and left trochanteric bursitis.  (*Id.*)  At step three, the ALJ

concluded that Plaintiff does not have an impairment or combination of impairments that meet or exceed the impairments contained in the Listing of Impairments. (A.R. 27.) Prior to step four, the ALJ indicated that Plaintiff "has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) involving no climbing activities and nor more than occasional postural movements." (A.R. 27.) In reaching this determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (A.R. 29-30.) At step four, the ALJ found that Plaintiff was capable of performing her past relevant work. (A.R. 31.) Therefore, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (*Id.*)

## IV.   DISCUSSION

In Plaintiff's motion for summary judgment, Plaintiff contends the ALJ committed two reversible errors: (1) failing to address the state agency physicians' opinion evidence; and (2) failing to provide legally sufficient reasons for rejecting Plaintiff's testimony. Plaintiff requests that the case be reversed and remanded for further proceedings. In Defendant's cross-motion for summary judgment, Defendant counters that the ALJ's decision was adequately supported by substantial evidence and should be upheld.

## A.   <u>Consideration of Agency Physicians' Opinion Evidence</u>

Plaintiff argues the ALJ erred by ignoring the opinions of the State agency physicians, Dr. Wahl and Dr. Kalmar that Plaintiff was limited to 2 hours of standing and walking. Plaintiff contends this error is material because if the opinions had been considered, Plaintiff may have been found disabled.[2] Defendant concedes the ALJ did not

---

[2] Plaintiff also argues that remand to further develop the record is appropriate based on the hypothetical questions Plaintiff's counsel posed to the vocational expert. Specifically, to address the additional limitation that a claimant with the same age, education, work history and exertional limitations as Plaintiff, also be limited to "simple repetitive tasks." (*See* A.R. 59-60.) However, the ALJ did not find Plaintiff had any severe mental impairments or work-related mental functional ability (A.R. 26), and Plaintiff does not challenge the ALJ's findings with regard to her mental impairments. Because the ALJ is "free to accept

address the opinions of Dr. Wahl and Dr. Kalmar.   However, Defendant argues the omission was harmless because Dr. Wahl and Dr. Kalmar's opinions fully support the ALJ's determination.

The Social Security regulations provide that when assessing a disability claim, the ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence." 20 C.F.R. § 404.1527(e)(2)(i).  Further, unless the ALJ gives a treating physician's opinion controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency [physician]." 20 C.F.R. § 404.1527(e)(2)(ii).  It is error for the ALJ not to consider the opinion of a reviewing physician. *Roy v. Colvin*, 2016 WL 3635762 (9th Cir. July 7, 2016).  However, remand is not required if the error was harmless. *Id.*  "[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

At step four of the sequential evaluation process for evaluating disability, the AJL must decide whether Plaintiff has the residual functional capacity ("RFC") to perform her past relevant work, either as Plaintiff actually performed it, or as it is generally performed in the national economy. 20 CFR § 404.1560(b)(2).  For the purpose of determining the physical exertion requirements of work in the national economy, jobs are classified into five categories: sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. Here, the vocational expert testified that Plaintiff's past relevant work was light as actually performed, and sedentary as generally performed.  (A.R. 57-59.)

---

or reject restrictions in a hypothetical question that are not supported by substantial evidence," *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006), the Court finds no further factual development is necessary.

1    Light work is defined as work involving "lifting no more than 20 pounds at a time
2    with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the
3    weight lifted may be very little, a job is in this category when it requires a good deal of
4    walking or standing, or when it involves sitting most of the time with some pushing and
5    pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  "[T]he full range of light work
6    requires standing or walking off and on, for a total of approximately 6 hours of an 8 hour
7    workday."  Social Security Ruling 83-10, 1983-1991 Soc. Sec. Rep. Serv. 24, 1983 WL
8    31251, *5 (1983).  Sedentary work is defined as work involving "lifting no more than 10
9    pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and
10   small tools.  Although a sedentary job is defined as one which involves sitting, a certain
11   amount of walking and standing is often necessary in carrying out job duties.  Jobs are
12   sedentary if walking and standing are required occasionally and other sedentary criteria are
13   met."  20 C.F.R. § 404.1567(a).  "[A]t the sedentary level of exertion, periods of standing
14   or walking should generally total no more than about 2 hours of an 8-hour workday, and
15   sitting should generally total approximately 6 hours of an 8-hour workday."  Social
16   Security Ruling 83-10 at * 5.

17   Here, Dr. Wahl and Dr. Kalmar opined that Plaintiff was limited to standing and/or
18   walking no more than 2 hours of an 8-hour workday.  (A.R. 62-75; 77-87.)  Thus, according
19   to their opinions, Plaintiff would be limited to sedentary work.  Nevertheless, the ALJ's
20   error in not considering their opinions is harmless.  The vocational expert testified that
21   Plaintiff's past relevant work was light as actually performed, and sedentary as generally
22   performed.  (A.R. 57-59.)  Therefore, even assuming Plaintiff was limited to sedentary
23   work, she could perform her past relevant work as it is generally performed in the national
24   economy.  Accordingly, the ALJ's determination that Plaintiff could perform her past
25   relevant work is supported by the record.

26   / / /
27   / / /
28   / / /

15cv1104-AJB (DHB)

**B.      Credibility Determination**

Plaintiff argues the ALJ improperly rejected her testimony as to the persistence and severity of her symptoms.  Defendant counters that the ALJ provided numerous reasons that justified finding Plaintiff not credible.

The credibility of a claimant's testimony regarding subjective pain is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*

"In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).  "It is not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Moreover, the ALJ may not discredit a claimant's testimony of pain solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence").  "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995); 20 C.F.R. § 404.1529(c)).  Even if one or more reasons listed by the ALJ are invalid,

so long as the ALJ provides some valid reasons, the ALJ's credibility determination will be upheld. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Batson*, 359 F.3d at 1195-97.

Here, the ALJ found Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." (AR 29.)   However, she concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id*.) Because the ALJ found Plaintiff met the first step of the test, the issue is whether the ALJ provided "specific, clear and convincing reasons" for the adverse credibility finding. *See Vasquez*, 572 F.3d at 591.   The Court finds she did.

First, the ALJ found Plaintiff's severe medical impairments were not disabling to the extent Plaintiff alleged.   The ALJ noted that there was no indication Plaintiff suffered any fracture or sever injury in the October 2009 rear-end motor vehicle accident, and that Plaintiff was able to work for approximately a year after the accident. (A.R. 29.)   The ALJ also made various observations based on Plaintiff's medical records, including that there was no indication Plaintiff's medical condition became progressively worse over time; that Plaintiff did not require any surgical procedures; that diagnostic scans showed Plaintiff had multi-level degenerative arthritis, but no disc herniations, nerve root impingements or spinal canal stenosis; that MRI scans between 2010 and 2012 did not show significant changes in her back or neck; that although Plaintiff had reduced ranges of motion in her neck and back, she had not consistently had positive radicular pain signs or neurological deficits; and that updated nerve conduction testing showed improvement in Plaintiff's ulnar nerve neuropathy. (A.R. 29-30.)   These findings are all supported by the record. (*See* A.R. 308-322, 323-337, 338, 414-430, 447-448, 527, 584-598, 709-721 722-736, 750-751, 796, 853-873, 912-914, 999-1010, 1157-1168.)

The ALJ stated that although there were various references in the record that Plaintiff used a cane, "there is no indication she was actually prescribed the use of an assistive

ambulation device." (A.R. 29.)  However, it appears there may be contradictory evidence in the record.  On June 3, 2010, Dr. Lin indicated in her treatment notes that Plaintiff's gait was antalgic without an assistive device, and indicated Plaintiff could use a single point cane as necessary.  (A.R. 527.)  It is not entirely clear if Dr. Lin's note meant she prescribed the cane, or merely noted her observation that Plaintiff used a cane.  The ALJ also stated that there was no medical support for Plaintiff's allegations that she had problems falling down, weakness in her hands causing her to drop things, and the inability to lift coins.  (A.R. 30.)  However, Plaintiff did report a falling incident to Dr. Park on September 26, 2011.  (A.R. 1012-1018.)  Plaintiff also reported being "klutzy" and her legs giving out to Dr. Lin on March 19, 2010.  (A.R. 415.)  However, even assuming the cane was prescribed, and that there was some evidence in the record that Plaintiff may have had problems falling, the fact that one or more of the ALJ's findings are invalid does not require remand, as long as the ALJ provides other valid reasons.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d at 1227; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d at 1162-63; *Batson*, 359 F.3d at 1195-97.

Second, the ALJ noted that Plaintiff was treated conservatively with physical therapy, injections and medication, and that Plaintiff did not require any surgical procedures.  (A.R. 29-30.)  The ALJ also found Plaintiff was released from physical therapy in late 2011, and there was no indication she required more than home exercise and medication to treat her pain complaints.  (A.R. 30.)  The ALJ noted that Plaintiff had not submitted any additional medical evidence since early 2012.  (A.R. 29.)  These findings are supported by the record.  Plaintiff reported improvement from steroid injections and physical therapy.  (A.R. 428-429, 656, 722-736, 750, 833, 854, 894, 999, 1179.)  She also used tramodal instead of morphine for pain management.  (A.R. 952-954.)  Plaintiff was examined by a surgeon, who determined she did not need surgery.  (A.R. 709-721.)  The ALJ is permitted to consider evidence of conservative treatment "to discount a claimant's testimony regarding the severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

Third, the ALJ found there was no credible evidence of regular use of strong medication that would significantly impair Plaintiff's ability to do basic work activities, and no evidence of any significant side effects.  (A.R. 30.)  This conclusion is also supported by the record.  At one point, Plaintiff was treated with morphine.  (A.R. 855, 875-876.)  Plaintiff initially reported it was helpful and that she was tolerating the morphine well without any side effects.  (A.R. 913-914.)  Not long afterwards, however, Plaintiff discontinued the morphine and asked to take tramadol instead.  (A.R. 953-954.)

Fourth, the AJL found there was "no clear correlation between the available medical evidence and when [Plaintiff] ceased working."  (A.R. 29.)  The ALJ noted that Plaintiff continued working for over year after her car accident, and that no physician had determined Plaintiff was precluded from work.  (*Id.*)  Rather, the ALJ noted, Plaintiff had been encouraged to increase her physical activity, and that in December 2011, Dr. Deree found there was no reason for Plaintiff to be on a work restriction.  (A.R. 29-30.)  These findings are supported by the medical record.  (*See* A.R. 311-313, 339, 428-429, 589, 855-856, 1073, 1163.)  Plaintiff first saw Dr. Park after the car accident in October 2009.  (A.R. 308-322.)  Dr. Park indicated Plaintiff had pain in her neck, back, left arm and right leg, but that she was able to work and had normal strength and range of motion.  (*Id.*)  Over a year later, on November 19, 2010, when Dr. Park saw Plaintiff for an unrelated condition, he noted that Plaintiff requested documentation because she was "going on disability starting tomorrow."  (A.R. 694.)  However, his notes did not indicate he or any other physician had recommended Plaintiff cease working.

Finally, the ALJ found Plaintiff's daily activities were inconsistent with her statements concerning the intensity, persistence, and limiting effects of her impairments.  Specifically, the ALJ found that Plaintiff engaged in everyday activities including shopping, running errands, performing light household chores, driving, and arranging for transportation as needed.  (A.R. 30.)  The ALJ also noted there was no indication Plaintiff was incapable of caring for her personal needs.  (*Id.*)  There is substantial evidence in the record to support these findings.  For example, on July 8, 2011, Dr. Lovett noted that

22

Plaintiff was able to go shopping, run errands, stretch, and perform activities of daily living. (A.R. 785, 913, 924.)  An ALJ may consider a claimant's daily activities in weighing the claimant's credibility.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In conclusion, the Court finds that the ALJ set forth "findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

## V.    CONCLUSION

After a thorough review of the record in this matter and based on the foregoing analysis, this Court **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED** and Defendant's cross-motion for summary judgment be **GRANTED**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c).

IT IS HEREBY ORDERED that **no later than July 28, 2016**, any party may file and serve written objections with the Court and serve a copy on all parties.  The documents should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no later than five days** after being served with the objections.  The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  July 14, 2016

DAVID H. BARTICK
United States Magistrate Judge

23