UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE C. JENSEN,<br><br>         Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>         Defendant. | Case No.: 15-CV-1104-AJB-DHB<br><br>**ORDER:**<br><br>**(1) ADOPTING REPORT AND RECOMMENDATION, (Doc. No. 23);**<br><br>**(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (Doc. No. 16); AND**<br><br>**(3) GRANTING COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT, (Doc. No. 20)** |

   On May 17, 2015, Plaintiff Marie C. Jensen ("Plaintiff") filed a complaint seeking judicial review of the Social Security Administration Commissioner's ("Commissioner") decision denying her claim for disability insurance benefits. (Doc. No. 1.) On November 30, 2015, Plaintiff filed a motion for summary judgment. (Doc. No. 16.) The Commissioner filed a cross-motion for summary judgment on February 24, 2016. (Doc. No. 20.) On July 14, 2016, Magistrate Judge David H. Bartick issued a Report and Recommendation ("R&R") recommending the Court deny Plaintiff's motion for summary judgment and

grant the Commissioner's cross-motion. (*Id.* at 23.) On July 29, 2016, Plaintiff timely filed an objection to the R&R. (Doc. No. 24.) After reviewing the parties' pleadings and the record, and for the reasons set forth below, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the R&R in its entirety, **DENIES** Plaintiff's motion for summary judgment, and **GRANTS** the Commissioner's cross-motion for summary judgment.

## BACKGROUND

Plaintiff was born on October 24, 1955, and was 57 years old on her alleged onset date of disability of November 30, 2010.[1] Plaintiff alleges her ailments stem from a motor vehicle accident she was involved in on October 26, 2009. Her medical reports span the period of 2009 through early 2012 and document her conditions of obesity, cervical and lumbar spine degenerative arthritis, left ulnar neuropathy, and left trochanteric bursitis.

On October 18, 2011, Plaintiff filed for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning November 30, 2010. (AR 210–14.)[2] Her claim was initially denied on January 27, 2012, and again on June 5, 2012, upon reconsideration. (AR 90–94, 97–101.) She requested a hearing before an ALJ. (AR 103–04.) A hearing before ALJ Sally C. Reason was held on July 29, 2013. (AR 44–61.) Plaintiff appeared and was represented by counsel. (AR 44.) At the hearing, vocational expert Gregory Jones testified. (AR 44.)

The ALJ rendered an unfavorable decision on September 5, 2013, finding Plaintiff was not entitled to benefits. (AR 21–32.) Specifically, the ALJ found Plaintiff was not disabled at any time from November 30, 2010, through the date of the ALJ's decision. (AR 31.) The ALJ applied the requisite five-step test contained in 20 C.F.R. §§ 404.1520 and 416.920. (AR 22–31.)

At the first step, the ALJ found Plaintiff has not engaged in substantial gainful

---

[1] Magistrate Judge Bartick's R&R provides a thorough and detailed summary of the relevant factual background in this case; accordingly, the majority of this section has been taken directly from the R&R.

[2] All references to "AR" are to the Administrative Record.

activity since November 30, 2010. (AR 23.) At the second step, the ALJ found Plaintiff suffered from the following severe impairments: obesity, cervical and lumbar spine degenerative arthritis, left ulnar neuropathy, and left trochanteric bursitis. (AR 23–27.) At step three, the ALJ found Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 27.) The ALJ further found Plaintiff retained the residual functional capacity to perform light work involving no climbing activities and no more than occasional postural movements. (AR 27–31.) In making this assessment, the ALJ failed to consider the opinions of Dr. Wahl and Dr. Kalmar. (*See* AR 27–31.) The ALJ also found Plaintiff's testimony concerning her subjective pain and symptoms to be not entirely credible. (AR 29.)

At step four, the ALJ found Plaintiff capable of performing her past relevant work as a check cashing agency cashier. (AR 31.) Based on this finding, the ALJ found Plaintiff was not under a disability from November 30, 2010, through the date of the ALJ's decision. (AR 31.) As such, the ALJ did not reach step five.

The ALJ's decision became final on March 25, 2015, when the Appeals Council denied Plaintiff's request for review. (AR 1–6.) Plaintiff thereafter instituted the instant action by filing the operative complaint on May 17, 2015. (Doc. No. 1.) On August 31, 2015, the Commissioner answered and lodged the administrative record with the Court. (Doc. Nos. 11, 12.) Plaintiff moved for summary judgment on November 30, 2015, (Doc. No. 16), and Defendant cross-moved for summary judgment on February 24, 2016, (Doc. No. 20). On July 14, 2016, Magistrate Judge Bartick issued an R&R, recommending that Plaintiff's motion for summary judgment be denied and the Commissioner's be granted. (Doc. No. 23.) Plaintiff timely objected to the R&R. (Doc. No. 24.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district judge's duties in connection with a magistrate judge's report and recommendation. The district judge must "make a de novo determination of those portions of the report . . . to

which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see United States v. Remsing*, 874 F.2d 614, 617–18 (9th Cir. 1989).

An unsuccessful applicant for social security disability benefits may seek judicial review of a final agency decision. 42 U.S.C. § 405(g). However, "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Accordingly, a reviewing court must "follow three important rules in [its] analysis of the ALJ's decision." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, the Court "leave[s] it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Treichler*, 775 F.3d at 1098. Second, the Court must "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)). Finally, the Court must uphold an ALJ's decision, even when the ALJ commits legal error if that error is harmless. *Treichler*, 775 F.3d at 1099.

## DISCUSSION

Plaintiff objects to the R&R on two grounds: (1) the Magistrate Judge improperly found the ALJ's failure to address the opinions of Dr. Wahl and Dr. Kalmar to be harmless;

and (2) the Magistrate Judge improperly found the ALJ articulated clear and convincing reasons for rejecting Plaintiff's testimony concerning her subjective pain and symptoms. The Court will address each contention in turn.

### I. *The ALJ's Failure to Address the Experts' Opinions was Harmless Error*

Plaintiff first objects to the R&R on the basis that the ALJ's failure to consider Dr. Wahl and Dr. Kalmar's opinions was not harmless error. (Doc. No. 24 at 3–4.) These physicians opined that Plaintiff could not stand and walk for more than two hours per eight-hour workday, which would, according to Plaintiff, preclude her from performing her past relevant work. (*Id.*) Because "[t]he [C]ourt cannot confidently conclude that no reasonable ALJ would reach a different result[,]" Plaintiff argues the ALJ's error mandates reversal of the Commissioner's final decision. (*Id.* at 4.) The Court agrees with the Magistrate Judge that though the ALJ erred in wholly failing to consider the physicians' opinions, this error was harmless.

The Social Security regulations require the ALJ to "consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). The ALJ "must explain in the decision the weight given to the opinions of a State agency [physician.]" *Id.* § 404.1527(e)(2)(ii). The ALJ errs if he or she fails to consider the opinion of a reviewing physician. SSR 96-6p, 1996 WL 374180 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(e)(1)(ii) ("the State agency disability examiner *will* consider the opinion of the State agency medical or physical consultant as opinion evidence" (emphasis added)). However, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990)). An error is harmless if "the ALJ's decision remains legally valid, despite such error," not if "the ALJ would have made a different decision absent any error[.]" *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *see Brown-Hunter,* 806 F.3d at 494 ("An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error,

the agency's path may reasonably be discerned." (citations and internal quotation marks omitted)).

In assessing the severity of Plaintiff's ailments, the ALJ found she suffered from the medically determined impairments of obesity, cervical and lumbar spine degenerative arthritis, left ulnar neuropathy, and left trochanteric bursitis. (AR 23–27.) In light of these impairments, the ALJ concluded Plaintiff had the residual functional capacity to perform light work involving no climbing activities and no more than occasional postural movements. (AR 27, 30–31.) Because the vocational expert testified that a check cashing agency cashier—Plaintiff's past relevant work—requires no more than "sedentary" work activity as generally performed, or "light" work activity as Plaintiff actually performed it, the ALJ concluded Plaintiff is capable of performing past relevant work as a check cashing agency cashier. (AR 31.) Accordingly, the ALJ found Plaintiff was not disabled. (AR 31–32.) In so finding, however, the ALJ wholly ignored Dr. Wahl's and Dr. Kalmar's opinions.

It was clearly erroneous for the ALJ to render her decision without even a passing reference to the physicians' opinions. *See* 20 C.F.R. § 404.1527(e)(1)(ii); *see also Roy v. Colvin*, No. 14-35162, 2016 WL 3635762, ¶ 3 (9th Cir. July 7, 2016) ("The ALJ erred by not considering the opinion of Dr. Eisenhauer, a reviewing physician."). The physicians opined that Plaintiff cannot stand for more than two hours during an eight-hour workday. (AR 72, 84.) Plaintiff argues that "[n]o one asked if the limitation to standing and walking for only two hours per day would permit [Plaintiff] to perform her past relevant work either as she performed it or as it is actually performed." (Doc. No. 24 at 3–4.) Accordingly, Plaintiff concludes the ALJ's failure was reversible error. (*See id.* at 4.)

The Court disagrees. Whether a benefits claimant has the residual functional capacity to perform past relevant work is judged against a two-part test: (1) "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it"; **_or_** (2) "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61, 1982

WL 31387 (Aug. 20, 1980) (emphasis added). In other words, the ALJ properly determined Plaintiff is capable of performing her past relevant work if she had the capacity to perform it as she *actually performed it* **or** *as it is ordinarily performed* by employees throughout the national economy.

"Sedentary" work activity is defined as work that requires "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." SSR 83-10, 1983 WL 31251 (Feb. 26, 1979). "Light" work activity is defined as work that requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* A job that falls within the "light" work activity category "requires a good deal of walking—the primary difference between sedentary and most light jobs. . . . [T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* Meanwhile, a job falling within the "sedentary" work activity category involves "periods of standing or walking [that] generally total no more than about 2 hours of an 8-hour workday[.]" *Id.*

Dr. Wahl and Dr. Kalmar both opined that Plaintiff is appropriately limited to two hours of standing and walking. (AR 72, 84.) The vocational expert opined that Plaintiff's past relevant work is sedentary work activity as generally performed. (AR 57.) Given that sedentary work activity involves no more than 2 hours of standing or walking during an 8-hour workday, the physicians' opinions are perfectly consistent with the ALJ's determination that Plaintiff is capable of performing her past relevant work and is thus not disabled. The ALJ's conclusion is further consistent with the physicians' opinions that Plaintiff has the residual functional capacity to perform her past relevant work as generally performed in the national economy and that she is not disabled. (AR 74–75, 86.) *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (finding substantial evidence supported the ALJ's conclusion that the claimant could perform some work in part because "[n]one of the doctors who examined [the claimant] expressed the opinion that he was totally disabled").

Plaintiff nevertheless argues that reversal and remand is appropriate because the vocational expert opined that a hypothetical individual with Plaintiff's age, education, and work history with a residual functional capacity similar to Plaintiff's who was limited to simple, repetitive tasks could not perform Plaintiff's past relevant work. (Doc. No. 16 at 5; AR 59–60.) However, the ALJ was free to disregard this hypothetical in light of her conclusion that Plaintiff had no severe mental impairments or work-related mental health restrictions that would limit Plaintiff to simple, repetitive tasks. (AR 26.) *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) ("The ALJ [] 'is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.'" (quoting *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001))). A limitation to "simple, repetitive tasks" describes a claimant's mental limitations. *See, e.g.*, *Thomas*, 278 F.3d at 956 ("The 'failure to complete tasks in a timely manner' is not a functional limitation but the end result of 'deficiencies of concentration, persistence or pace.'"); *Hughes v. Colvin*, 599 F. App'x 765, 766 (9th Cir. 2015) (finding any error the ALJ may have committed in failing to address certain medical evidence harmless "because the ALJ assessed Hughes' mental impairment as severe, and the ALJ's residual functional capacity took into account Hughes' mental functional limitations, including moderate difficulties in social functioning, concentration, and persistence, by restricting her to simple, routine, repetitive tasks"). Plaintiff does not contest the ALJ's determination relating to her mental health; accordingly, such argument is waived. *See Greger*, 464 F.3d at 973 (finding plaintiff waived the argument that "the ALJ erred in finding his psychological problems not severe" where plaintiff made the argument "for the first time on appeal").

Because the physicians' opinions are perfectly consistent with the ALJ's determination that Plaintiff can perform her past relevant work as generally performed, the ALJ's error was "inconsequential to the ultimate nondisability determination." *Stout*, 454 F.3d at 1055; *see also Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (finding ALJ's failure to give "specific witness-by-witness reasons for rejecting the lay testimony" harmless because that testimony would not have "alter[ed] the ultimate nondisability

determination"). Accordingly, the Court agrees with Magistrate Judge Bartick that the ALJ's failure to consider Dr. Wahl's and Dr. Kalmar's opinions was harmless.[3] As such, the Court **OVERRULES** Plaintiff's objection.

## II. *The ALJ Articulated Clear and Convincing Reasons for Discrediting Plaintiff's Testimony Concerning her Subjective Pain and Symptoms*

Plaintiff next argues that the ALJ failed to articulate clear and convincing reasons for rejecting her subjective complaints and symptoms as not entirely credible. (Doc. No. 24 at 4–6.) Plaintiff faults the R&R because it places weight on the fact that she continued to work for one year following her motor vehicle accident and by citing as support evidence of daily life activities that do not apply in a work setting. (*Id.* at 4–5.) She also suggests that the ALJ's statement that Plaintiff's condition did not become progressively worse is incorrect. (*Id.* at 4, 6.)

"In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony.'" *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting *Thomas*, 278 F.3d at 958). In deciding whether a plaintiff's testimony regarding subjective pain is credible, the adjudicator must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). "'First, the ALJ must determine whether the claimant has presented objective medical

---

[3] Plaintiff argues the Commissioner's decision must be reversed because the Court "cannot confidently conclude that no reasonable ALJ would reach a different result." (Doc. No. 24 at 4 (citing *Stout*, 454 F.3d at 1056).) This standard, however, is inapplicable to the instant matter because unlike the ALJ in *Stout*, the ALJ in this case ignored evidence that was fully consistent with her ultimate determination that Plaintiff is capable of performing her past relevant work and thus not disabled. In contrast, the ALJ in *Stout* failed to provide any reasons for rejecting uncontradicted, competent lay testimony that was directly at odds with the ALJ's determination that the plaintiff was able to perform his past relevant work as a vine pruner. 454 F.3d at 1053–57.

9

15-CV-1104-AJB-DHB

evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter*, 504 F.3d at 1036). Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ may "reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons'" for doing so. *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "[T]he ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Here, the ALJ concluded Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[.]" (AR 29.) No party challenges this conclusion. The first prong of the inquiry is therefore satisfied. Furthermore, there is no evidence of malingering. Consequently, the Court must assess whether the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony concerning her subjective pain that are supported by evidence in the record.

To support a finding that the plaintiff was not credible, the ALJ must "'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" *Vasquez*, 572 F.3d at 592 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). The ALJ must make specific findings "stat[ing] which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. The ALJ can consider the following when assessing the claimant's credibility: (1) her reputation for truthfulness; (2) inconsistencies in either her testimony or between her testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of her condition. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

The reviewing court must bear in mind that it should not "second-guess" an ALJ's credibility determination. *See Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). Accordingly, where an ALJ's credibility determination is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting the

claimant's testimony are improper. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008).

Contrary to Plaintiff's assertions, the ALJ did not disregard Plaintiff's testimony without legitimate reason. The ALJ provided numerous reasons for her decision that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [] not entirely credible . . . ." (AR 29.) For example, Plaintiff continued to work for approximately one year following the motor vehicle accident, and she did not require any surgical procedures as a result of the accident; there is no apparent correlation between the accident, available medical evidence, and when Plaintiff ceased working; there is no indication that Plaintiff's condition became aggravated or progressively worse over time; Plaintiff was treated conservatively with physical therapy, medications, and intermittent epidural injections; there is no indication Plaintiff was unable to care for her personal needs or was prevented from driving or performing light household chores or daily living activities such as shopping and running errands; Plaintiff submitted no medical evidence to the ALJ covering the period since 2012; and the ALJ observed during the proceedings that Plaintiff's thoughts did not wander and she answered questions alertly and promptly. (AR 29–30.) The ALJ also relied on the lack of objective medical evidence to support the degree of disability Plaintiff claimed, including her physicians' advice to engage in more physical activity. (AR 29–30.)

As Magistrate Judge Bartick noted, these reasons are supported by the record. (Doc. No. 23 at 20.) Plaintiff decries the ALJ's reliance on certain factors. (Doc. No. 24 at 4–6.) Plaintiff's contentions, however, are without merit. To the extent Plaintiff nitpicks specific factors relied upon, the ALJ is required to consider all factors that comport with the Social Security Administration's rules. 67 Fed. Reg. 57859-02, 57860; *Orn*, 495 F.3d at 635–36. As such, the ALJ's reliance on the lack of correlation between Plaintiff's accident and cessation of work was appropriate because it bears on whether "inconsistencies . . . between [Plaintiff's] testimony and conduct" exist. *Orn*, 495 F.3d at 636 (citing *Fair*, 885 F.3d at 603).

The ALJ's reliance on Plaintiff's conservative treatment regimen and daily living activities is likewise appropriate. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Orn*, 495 F.3d at 639 (stating consideration of daily activities is proper where they contradict claimant's testimony or "meet the threshold for transferable work skills"). As the Magistrate Judge noted, Plaintiff's ability to engage in daily living activities like shopping, running errands, performing light household chores, and driving are inconsistent with her statements concerning the intensity, persistence, and limiting effects of her impairments. (Doc. No. 23 at 22–23.) *See Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Contrary to Morgan's claims of disability, the ALJ determined that Morgan's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of Morgan's ability to work. If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").[4]

Plaintiff seemingly suggests the ALJ's observation that Plaintiff's condition did not become progressively worse is incorrect. However, the record supports the conclusion the ALJ reached. For example, MRI scans between 2010 and 2012 did not show any significant changes in Plaintiff's back or neck over time. (AR 338, 527, 725, 730.) Updated conduction testing from prior to Plaintiff's disability onset date cited improvement in her ulnar neuropathy. (AR 323–37, 420, 447–51, 751.) Plaintiff's physicians, for the most part, found

---

[4] The Court notes that SSR 16-3P, a social security ruling upon which Plaintiff relies, (Doc. No. 24 at 5–6), also provides for consideration of daily activities in evaluating a claimant's subjective symptoms.

her to have normal strength, motor function, coordination, neurological functioning, reflexes and strength, and the weakness Plaintiff was experiencing in her fingers had resolved by May 2011. (AR 311, 316, 324–25, 339, 446, 448, 584, 657, 665, 713, 726, 751, 832, 1161.) Plaintiff was also discharged from physical therapy in late 2011. (*See* AR 995.) While Plaintiff points to a handful of factors that may indicate a progression in her condition, the Court "leave[s] it to the ALJ to . . . resolve ambiguities in the record." *Treichler*, 775 F.3d at 1098; *see also Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

It appears the ALJ may have relied on some factors that are not supported by the record. For example, the ALJ noted that "there is no indication [Plaintiff] was actually prescribed the use of an assistive ambulation device." (AR 29.) However, as the Magistrate Judge points out, Dr. Lin indicated in her treatment notes that Plaintiff's gait was antalgic without an assistive device and that Plaintiff could use a single point cane as necessary. (AR 527.) Though it is not clear whether this was simply an observation or a prescription, the Court "leave[s] it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Treichler*, 775 F.3d at 1098. Even if incorrect on this point, the ALJ's reliance on some invalid findings does not render the ultimate conclusion reversible if valid reasons remain. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).[5]

In sum, the Court finds the ALJ satisfied her duty to set forth clear and convincing reasons for her determination "with enough specificity to allow [the Court] to confirm that

---

[5] Plaintiff contends the Court may not simply "redline out invalid statements[.]" (Doc. No. 24 at 4.) Contrary to Plaintiff's assertion, the relevant inquiry in this context is not whether the Court may "confidently conclude that no reasonable ALJ would have reached a different result without the invalid reason," (*id.*), but rather "whether the ALJ's decision remains legally valid, despite such error," *Carmickle*, 533 F.3d at 1162 (rejecting dissent's representation of the relevant inquiry as being "whether the ALJ would have made a different decision absent any error").

the testimony was rejected on permissible grounds and not arbitrarily." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1041 (9th Cir. 2003). For this reason, the Court **OVERRULES** Plaintiff's objection.[6]

## CONCLUSION

For the reasons set forth above, the Court **OVERRULES** Plaintiff's objections, (Doc. No. 24), and **ADOPTS** Magistrate Judge Bartick's report and recommendation in full, (Doc. No. 23). Plaintiff's motion for summary judgment, (Doc. No. 16), is **DENIED**, and the Commissioner's cross-motion for summary judgment, (Doc. No. 20), is **GRANTED**.

**IT IS SO ORDERED.**

Dated: August 29, 2016

Hon. Anthony J. Battaglia
United States District Judge

---

[6] The Court notes that Dr. Wahl and Dr. Kalmar—whose opinions Plaintiff faults the ALJ for not discussing when finding Plaintiff could perform her past relevant work—opined that Plaintiff was only partially credible concerning her statements regarding her symptoms. (AR 71–72, 83.)